UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    AURELI JOHANNA RUGGIERI,

                                *Debtor*.

Case No. 23-11332
Chapter 7

THERESA TERRASI-RUGGIERI,
                                *Plaintiff*,

    v.

AURELI JOHANNA RUGGIERI,
                                *Defendant*.

Adv. P. No. 24-90009

APPEARANCES:

James F. Selbach, Esq.
Selbach Law Offices, P.C.
*Attorney for Plaintiff*
8809 Daylight Drive
Liverpool, New York 13090

Sandra P. Demars, Esq.
*Attorney for Defendant*
817 Madison Avenue
Albany, New York 12208

Paula M. Barbaruolo, Esq.
Barbaruolo Law Firm, PC
*Former Attorney for Defendant*
12 Cornell Road
Latham, New York 12110

Robert E. Littlefield, Jr., United States Bankruptcy Judge

-1-

## MEMORANDUM DECISION AND ORDER

Currently before the Court is an adversary proceeding filed by Theresa Terrasi-Ruggieri (the "Plaintiff") objecting to the discharge of Aureli Johanna Ruggieri (the "Defendant") in the underlying bankruptcy case as well as the dischargeability of the Plaintiff's debt.[1] There is also a counterclaim filed by the Defendant arguing the Plaintiff violated the automatic stay. The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[2] Venue is proper pursuant to 28 U.S.C. § 1409(a).

## FACTS

### I.   Personal Loan

The Plaintiff is the Defendant's mother-in-law. From 2016 to 2018, the Plaintiff loaned money to the Defendant and the Defendant's spouse (the Plaintiff's son) on two occasions. *See* Proof of Claim No. 2-1. On September 26, 2016, the Plaintiff loaned her son and daughter-in-law $56,991.00. *Id.* On August 5, 2018, the Plaintiff loaned the couple an additional $35,000.00, for a total of $91,991.00. *Id.* Both the Defendant and her spouse signed the loan agreement. According to the adversary complaint, the Defendant failed to make any payments towards the loans. AP No. 1 at ¶ 7.

### II.   State Court Action

On September 12, 2023, the Plaintiff initiated an action against the Defendant in New York State Supreme Court to recover the money loaned to the Defendant. *See Theresa Terrasi-Ruggieri*

---

[1] Citations to the docket of the bankruptcy proceeding (Case No. 23-11332) will be referenced as "ECF No. #;" citations to the docket of the adversary proceeding (Case No. 24-90009) will be referenced as "AP No. #."

[2] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) (the "Bankruptcy Code").

*v. Aureli Ruggieri*, Index No. 908551-23 (N.Y. Sup. Ct. Sept. 12, 2023). As will be discussed in more detail herein, the Plaintiff received a default judgment against the Defendant in the state court proceeding on February 26, 2024. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. No. 10 (Feb. 26, 2024); *see, infra,* at Discussion Section III. The default judgment remains outstanding today.

### III. Bankruptcy Filing

On December 29, 2023, the Defendant filed the underlying Chapter 7 bankruptcy.[3] ECF No. 1. The Plaintiff was listed in the Defendant's Schedule E/F as an unsecured creditor. ECF No. 1 at 30. The Defendant lists the disputed debt as $91,901.09[4] and indicates that her husband is a codebtor on the obligation. *Id.* at 30, 33. On February 22, 2024, Paul A. Levine, Esq., the Chapter 7 Trustee, filed a report of no distribution. *See* ECF No. 18.

### IV. Adversary Proceeding

On April 8, 2024, the Plaintiff initiated this adversary proceeding. AP No. 1. The adversary complaint includes two counts: denial of discharge pursuant to 11 U.S.C. § 727 and denial of dischargeability of debts pursuant to 11 U.S.C. § 523. *See id.* On May 7, 2024, the Defendant filed her answer to the complaint and filed a counterclaim against the Plaintiff for violating the automatic stay pursuant to § 362(k) (the "Counterclaim"). AP No. 7. The Plaintiff filed a reply to the Defendant's answer and counterclaim on June 13, 2024. AP No. 13.

On March 28, 2025, the Defendant filed her pretrial statement. AP No. 35. The Plaintiff filed her pretrial statement on March 31, 2025. AP No. 36. A trial in this adversary proceeding

---

[3] The Defendant's husband, John Ruggieri, filed his own Chapter 7 bankruptcy on May 12, 2022. *See In re John Michael Ruggieri*, Case No. 22-10441 (Bankr. N.D.N.Y. May 12, 2022). The Chapter 7 Trustee in his case filed a report of no distribution and he received a discharge on August 29, 2022. *Id.* at ECF No. 15. The Plaintiff did not object to his discharge or the dischargeability of her claim against him.

[4] It is unclear whether the $89.91 discrepancy between this number and the obligation on the loan agreement is due to a scrivener's error.

-3-

was held on April 7, 2025, after which the Court issued a briefing order for post-trial briefs. AP Nos. 38–39. On June 16, 2025, the Defendant submitted her post-trial brief. AP Nos. 42–43. That same day, the Plaintiff requested additional time to submit her post-trial brief, which was granted. AP Nos. 44–45. On June 20, 2025, the Plaintiff submitted her post-trial brief as well as a response to the Defendant's post-trial brief. AP Nos. 46–47. On June 23, 2025, the Defendant filed a letter with the Court indicating that she would not be filing a response to the Plaintiff's post-trial brief. AP No. 48. The matter became fully submitted at that time and placed on reserve.

## ARGUMENTS

The Plaintiff argues that the Defendant's bankruptcy petition and schedules have several material misstatements which should preclude the Defendant from receiving a discharge. As an alternative, the Plaintiff avers the Defendant secured the loan in question by using false pretenses such that the obligation should not be discharged.

The Defendant, on the other hand, contends that the petition and schedules are accurate and that any purported misstatement is immaterial. Similarly, the Defendant denies entering into the loan agreement under false pretenses.

In the Counterclaim, the Defendant claims the Plaintiff violated the automatic stay by continuing to prosecute the state court action referenced *supra*. In response, the Plaintiff argues she did not willfully violate the automatic stay and did not cause the Defendant any harm.

## DISCUSSION

**I.     Denial of Discharge Pursuant to 11 U.S.C. § 727**

Pursuant to the Bankruptcy Code, the Court may deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

> To prove a § 727(a)(4)(A) violation, a creditor must show that: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case."

*Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009) (quoting *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)). "The Plaintiff bears the burden of establishing each element of § 727(a)(4)(A) by a preponderance of the evidence." *Fido's Fences, Inc. v. Bordonaro (In re Bordonaro)*, 543 B.R. 692, 702 (Bankr. E.D.N.Y. 2016) (citing *Colish v. United States (In re Colish)*, 289 B.R. 523, 536 (Bankr. E.D.N.Y. 2002)).

"A denial of discharge is an extremely drastic and harsh sanction; it is the death penalty of bankruptcy." *Levine v. Raymonda*, Adv. P. No. 99-91199, 2001 Bankr. LEXIS 2374, at *5 (Bankr. N.D.N.Y. Feb. 9, 2001). Therefore, the action "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)).

In arguing for a denial of the Defendant's discharge, the Plaintiff focuses on several purported misstatements: failing to disclose a residential lease, failing to disclose a baptismal dress and failure to indicate that the Defendant briefly lived in the Dominican Republic within the three years prior to filing. *See* AP No. 46. Thus, the Court will concentrate its analysis on the same.

### A. Statement Under Oath

The definition of a statement under oath is relatively broad in the bankruptcy context and includes "bankruptcy schedules and [Statement of Financial Affairs] filed with the petition, as well as statements by the debtor during examinations under oath, such as testimony during the meeting of creditors held pursuant to § 341(a)." *Capital One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 336 (Bankr. E.D.N.Y. 2018) (citing *In re Moreo*, 437 B.R. 40, 61 (Bankr. E.D.N.Y. 2010)). Here, the Plaintiff is arguing that the Defendant's schedules are inaccurate in that they omit certain items, namely the lease, baptismal dress and other places of residence. AP No. 46. Because the Defendant signed her petition and declared "under penalty of perjury that the information provided is true and correct," the first factor is satisfied. ECF No. 1 at 6.

### B. Falsity of Statement

Next, the Court must determine whether the omissions in question are considered false. "Under [S]ection 727(a)(4)(A)'s second element, '[o]missions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes.'" *City of Atlantic City v. Drummon (In re Drummon)*, Case No. 24-cv-1668, at *14 (S.D.N.Y. May 7, 2025) (quoting *Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008)). "A statement is false if . . . it omits even one asset or source of income . . . ." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 75 (Bankr. E.D.N.Y. 2013).

The Defendant failed to list any lease in her Schedule G, thus the omission can be considered a false statement. *See* ECF No. 1 at 32. The Defendant also failed to indicate in her Statement of Financial Affairs that she had lived in the Dominican Republic, which can also be considered a false statement. *See* ECF No. 1 at 40.

The Defendant's failure to list the baptismal dress in her Schedule A/B, however, is less clear of an issue. A debtor lists their personal items in Part 3 of Schedule A/B. Here, the Defendant did list miscellaneous wardrobe items at a value of $500.00. ECF No. 1 at 12. While a debtor's schedules must "reasonably identify the assets to parties in interest," there are no set rules on how particular a debtor must be. *Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp., Inc.)*, 585 B.R. 685, 701 (Bankr. S.D.N.Y. 2018) (citing *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp.2d 482, 489 (E.D.N.Y. 2013)). Given the common practice of not itemizing every piece of clothing, the lack of a specific line-item for the baptismal dress is not surprising and does not *per se* indicate a false statement. Thus, the Plaintiff has failed to establish by a preponderance of the evidence that the baptismal dress should have been claimed as the Defendant's property.

### C. Knowingly False

"The knowledge requirement is satisfied by showing that 'the bankrupt knows what is true and, so knowing, willfully and intentionally swears to what is false.'" *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 62 (E.D.N.Y. 2010) (quoting *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958)). In this case, it is clear the Defendant knew of the residential lease since she was the one who entered into said agreement. *See* Plaintiff Exhibit 3. The Defendant also knew that she had lived in the Dominican Republic for a short period in the three years leading up to the bankruptcy. The Court next moves to the Defendant's purported fraudulent intent.

### D. Fraudulent Intent

"Fraudulent intent may be shown through circumstantial evidence or inferences from a course of conduct, all surrounding circumstances, and any evidence of a course of conduct." *Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014) (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983)).

> Fraudulent intent can be established by a showing of . . . the debtor's reckless disregard for the truth of his statements. Reckless disregard for the truth is analyzed by considering the following factors: (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors of carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Jiao v. Fan (In re Fan)*, 656 B.R. 666, 687–88 (Bankr. E.D.N.Y. 2024) (citing *In re Singh*, 585 B.R. at 338–39) (internal citations omitted).

The Defendant was examined at length during the course of the trial in this adversary proceeding. *See* AP No. 38. After careful observation and in light of the facts, the Court finds the Defendant's testimony to be persuasive in showing that she lacked fraudulent intent in making the false statements. The Defendant did not exhibit any reckless disregard for the truth or offer any indication that the false statements were the result of carelessness. While there were times that the Defendant became confused in answering questions, those instances did not suggest an intent to defraud or deceive. Rather, they appeared indicative of a typical debtor who lacks the familiarity of the bankruptcy petition to understand its complexities.

On the record, the Defendant noted that she had not listed the residential lease because she was unsure whether to list her current expenses or future expenses; since the lease did not begin until January 2024, there was understandable confusion on the subject. *See* Plaintiff Exhibit 3. The Defendant did also note in her Schedule J that she would be incurring new housing expenses due to her current home being placed on the market. ECF No. 1 at 38. This also cuts against the notion that the Defendant was trying to fraudulently hide her living arrangements and the lease. Former counsel for the Defendant also testified that she notified the Chapter 7 Trustee of the lease prior to the 341 meeting. *See id.*

As for the failure to list her time spent in the Dominican Republic, the Defendant testified that it was never meant to be a permanent relocation. *See* AP No. 38. What was meant to be a trip to visit family became an extended stay due to travel restrictions during the COVID-19 pandemic; nor did she envision the Dominican Republic becoming her place of residence when they returned in 2021. *See id.* The Plaintiff argues that the Defendant and her husband's sale of furnishings from and renting of their New York property is evidence of fraudulent intent. *See id.* While these facts do raise red flags, they are insufficient to establish fraudulent intent in light of the Defendant's testimony regarding same.

While these omissions certainly affected the accuracy of the Defendant's petition—and while counsel perhaps should have investigated some of these issues when helping the Defendant prepare her petition—the Court does not find that they go so far as to establish fraudulent intent. Thus, the Plaintiff has failed to establish that the omission of the residential lease or time living in the Dominican Republic warrant denial of the Defendant's discharge pursuant to § 727(a)(4)(A).

### E. Material Relation to the Bankruptcy

Because the Court has found that the omissions were made without fraudulent intent, it need not delve into the question of whether said omissions were material.

### II. Dischargeability of Debt Pursuant to 11 U.S.C. § 523

The Court now shifts to the issue of whether the Plaintiff's claim against the Defendant should be deemed nondischargeable. Pursuant to the Bankruptcy Code, a debt for money obtained by "false pretenses, a false representation, or actual fraud" is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(A). The test to determine nondischargeability under § 523(a)(2)(A) is similar to that for denying a discharge under § 727(a)(4(A):

> Five elements must be established: first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made;

third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*Fleet Credit Card Servs., L.P. v. Macias (In re Macias)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citing *chase Manhattan Bank, USA, N.A. v. Giuffrida (In re Giuffrida)*, 302 B.R. 119, 123 (Bankr. E.D.N.Y. 2003)). "Exceptions to discharge under Section 523 are construed . . . in favor of the debtor, in order to give effect to the Bankruptcy Code's objective of providing 'the debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Id.* (quoting *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)).

Here, the Plaintiff has failed to establish even the first factor required to make a finding of nondischargeability. According to the adversary complaint, the Defendant "borrowed money from Plaintiff under the pretense of wanting the Loan for the purpose of providing a home for [the Defendant's] children . . . and a career that would enable her to provide for her family." AP No. 1 at ¶ 32. The Plaintiff subsequently admits that the Defendant "used the money to purchase 212 Deerfield Ct, 2D Bullock Road, and toward her educational expenses." AP No. 1 at ¶ 34. Thus, it is clear that the Defendant used the funds exactly as had been anticipated by the parties.[5]

That the Defendant subsequently separated from her husband and did not immediately gain employment in her field of study does not indicate that she entered into the loan fraudulently.

> A bare promise to be fulfilled in the future, which is not carried out, does not render a consequent debt nondischargeable under § 523(a)(2)(A). An unfulfilled promise to perform in the future is actionable only in contract. It is insufficient under § 523(a)(a)(A) simply to show that debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a nondischargeable debt under § 523(a)(2)(A).

---

[5] The Plaintiff also alleges that the Defendant used some of these funds for trips to the Dominican Republic. AP No. 46 at 2. However, the Defendant indicated at trial that those expenditures were paid for with other funding sources, such as personal loans. *See* AP No. 38. The Plaintiff has failed to provide sufficient evidence to support her contention.

*In re Balzano*, 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991) (internal citations omitted). The Defendant and her husband purchased the two properties to build a home for their family. The Defendant went to school and subsequently gained employment in the accounting field.[6] The Plaintiff has therefore failed to show that the Defendant made a false representation in seeking the loan.

### III.    Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(k)

In her answer, the Defendant included the Counterclaim against the Plaintiff for an alleged violation of the automatic stay. "[A]n individual injured by any willful violation of a stay provided in this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "'Willful' in the context of § 362(k) means 'any deliberate act taken in violation of the stay, which the violator knows to be in existence.'" *In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015) (quoting *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098 (2d Cir. 1990)). "A failure to act by a creditor . . . where the creditor had knowledge of the bankruptcy filing, may likewise be a violation of the automatic stay." *In re Parry*, 328 B.R. 655, 658 (Bankr. E.D.N.Y. 2005).

As noted *supra*, the Plaintiff initiated the state court action on September 12, 2023, prior to the Defendant filing for bankruptcy. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. No. 1 (Nov. 17, 2023). The Plaintiff moved for default judgment in the state court matter two days prior to the Defendant filing this bankruptcy. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. No. 3 (Dec. 27, 2023). The Plaintiff was listed as a creditor in the Defendant's Schedule E/F and received notice of the bankruptcy. ECF No. 1 at 30; ECF Nos. 4–5.

---

[6] The Defendant listed in her Schedule I that she had retained employment in the area of accounting one month prior to filing for bankruptcy. ECF No. 1 at 35; *see* AP No. 1 at ¶ 39 (indicating that the Defendant had used the funding to acquire an accounting education).

-11-

"[U]pon receiving actual notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor." *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998) (citing *In the Matter of Sams*, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989)). Despite being informed of the Defendant's bankruptcy, the Plaintiff failed to notify the state court of the bankruptcy. As a result, the state court entered a default judgment against the Defendant on February 26, 2024. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. No. 10 (Feb. 26, 2024). In fact, Justice Corcoran did not become aware of the bankruptcy until the Defendant's bankruptcy counsel filed a letter with the state court notifying him of same; this prompted Justice Corcoran to seek answers from the Plaintiff as to whether she was "aware of any bankruptcy proceedings that implicate the instant action." *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. No. 15 (Apr. 9, 2024). It was only after Justice Corcoran reached out to the Plaintiff that the latter acknowledged the bankruptcy. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. Nos. 16 (Apr. 15, 2024). However, the Plaintiff would not submit a proposed order vacating the default judgment until several months later on September 8, 2024. *Theresa Terrasi-Ruggieri v. Aureli Ruggieri*, NYSCEF Doc. Nos. 17 (Sept. 8, 2024).

The fact that the Plaintiff was unaware that the continuation of the state court action violated the automatic stay is not a defense to § 362(k). "Such an act need not be performed with specific intent to violate the stay. Rather, so long as the violator possessed 'general intent in taking actions which have the effect of violating the automatic stay,'" a finding of a § 362(k) violation is appropriate. *In re Sucre*, 226 B.R. at 346 (quoting *In re Chateaugay Corp.*, 112 B.R. 526, 529 (S.D.N.Y. 1990)). At trial, the Plaintiff indicated that she had reached out to the state court to inquire about discontinuing the proceeding. *See* AP No. 39. Nevertheless, the Plaintiff's efforts

were clearly insufficient to discontinue the state court action.[7] *Cf. In re Krohn*, Case No. 24-10644, 2025 Bankr. LEXIS 756 (Bankr. N.D.N.Y. Mar. 28, 2025) (noting that the creditor immediately directed the sheriff and debtor's employer to cease collection activity after the bankruptcy was filed and received confirmation from the sheriff of same). As such, the Court finds the Plaintiff willfully violated the automatic stay by continuing the state court action against the Defendant after the bankruptcy had been filed.

Having found that the Plaintiff violated the automatic stay, the Court must next determine what damages should be imposed. While the parties have provided some briefing on the issue, the Court will hold an inquest on the matter to ascertain a fair and proper award.[8] *See, e.g.,* AP Nos. 7, 13, 43, 47.

## CONCLUSION

Now, after due deliberation and for the reasons stated herein, it is hereby

**ORDERED**, that the Plaintiff's request for relief under 11 U.S.C. § 727(a)(4) is denied; and it is further

**ORDERED**, that the Plaintiff's claim is deemed dischargeable pursuant to 11 U.S.C. § 523; and it is further

**ORDERED**, that a hearing to discuss the scheduling of a damages inquest with respect to the Counterclaim shall be held on October 30, 2025, at 10:00 a.m. The parties may appear either in person at the U.S. Bankruptcy Court, James T. Foley Courthouse, Room 306, Albany, New

---

[7] Despite communications with the state court, the Plaintiff never filed a letter or other correspondence to the state court on the docket or moved to vacate the default judgment. Further, these actions were taken only *after* former counsel for the Defendant reached out to the Plaintiff and notified her of the potential stay violation. *See* AP No. 39.

[8] It is unclear to the Court at this time what damages, actual and punitive (if any), should be associated with the Plaintiff's violation of the stay.

York or by video via Teams, for which pre-registration is required by 3:00 p.m. one business day before the hearing; go to https://www.nynb.uscourts.gov/Remote-Hearing-Appearances to register.

Dated: September 29, 2025
Albany, New York

/s/ Robert E. Littlefield, Jr._____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge